UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHARLES PRICE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    NO. 2:04-CV-242 PS |
| | ) |
| AMERICAN CYANAMID CO., LEDERLE | ) |
| LABORATORIES, INC. and LEDERLE | ) |
| LABORATORIES DIVISION OF | ) |
| AMERICAN CYANAMID CO., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

When a case is removed to federal court in 2004 alleging personal injuries suffered in 1991, statute of limitations concerns almost immediately come to mind. That is what occurred in this case. Plaintiff Charles Price seeks damages from Defendants for loss of consortium after his wife tragically acquired polio from a recently-vaccinated infant in 1991. In 1993, Mr. and Mrs. Price filed a joint complaint for their respective injuries in Indiana state court. Shortly after filing suit, however, the couple voluntarily dismissed the case in favor of the United States Court of Claims pursuant to a federal statute which required Mrs. Price – the person who sustained a vaccine-related injury – to pursue her claims at least initially in that forum. Mrs. Price ultimately accepted a substantial award from the Court of Claims. Mr. Price, however, learned that his loss-of-consortium claim never should have left state court. According to Defendants, by the time Mr. Price reinstated the case in state court – some four years after having dismissed it voluntarily – the two-year statute of limitations on his loss-of-consortium claim had expired.

Before the Court is Defendants' Motion for Summary Judgment [DE 45], which the Court now grants.

## FACTS

The events giving rise to this dispute occurred nearly fifteen years ago. In June 1991, Cathy Price, the wife of Plaintiff Charles Price, had contact with a child who recently had been vaccinated with Defendant American Cyanamid's oral polio vaccine. Shortly thereafter, Cathy Price contracted polio. Mrs. Price was diagnosed with polio no later than February 3, 1992. On that date, Mrs. Price reported to a therapist that she had been diagnosed with polio, that the "onset" had occurred on July 14, 1991, and that she was exposed to polio when she had contact with a recently-vaccinated child on June 11, 1991. [DE 47, Ex. H]

On June 10, 1993, Charles and Cathy Price filed a products liability suit against Defendants in Lake Circuit Court. In the Complaint, Mrs. Price sought damages for permanent paralysis, permanent disability, healthcare expenses incurred because of her condition, lost income, diminished earning capacity, and pain and suffering. Mr. Price sought damages for loss of consortium. [DE 47, Ex. A, ¶ 12 (" Mr. Price has sustained losses, has been damaged and injured and has otherwise lost the consortium of his previously healthy spouse.")]

On June 25, 1993, counsel for American Cyanamid wrote a letter to Plaintiffs' counsel, Mr. Delmar Kuchaes, regarding the Complaint. In its letter, American Cyanamid advised Mr. Kuchaes that "the National Childhood Vaccine Injury Act of 1986 (42 U.S.C. 300aa) requires that any claim based on the administration of a childhood vaccine after September, 1988 must be filed with the Federal Compensation Program." [DE 53, Ex. 1] American Cyanamid asked Mr. Kuchaes to "discontinue this suit" as required by the Vaccine Act. *Id*. In addition, American

Cyanamid provided Mr. Kuchaes with contact information for the federal Division of Vaccine Injury Compensation and the federal Court of Claims.

Mr. Kuchaes called the Division of Vaccine Injury Compensation.  The Division told Mr. Kuchaes that all claims arising from the administration of a polio vaccine must first be filed with the United States Court of Claims before any civil suit may be filed.  Mr. Kuchaes then filed a Notice of Dismissal Without Prejudice in Lake Circuit Court pursuant to Indiana Trial Rule 41(A)(1)(a).  The notice provided that Plaintiffs dismissed their cause of action against all Defendants "pending Plaintiffs' compliance with all statutory prerequisites."  [DE 53, Ex. 3]

The Prices took their time getting to the Court of Claims.  In July 1994, over a year after the voluntary dismissal in Lake Circuit Court, Charles and Cathy Price filed a petition in the Court of Claims (or the "Vaccine Court").  Things progressed slowly in the Court of Claims.  In December 1997, the Special Master presiding over the case and the Secretary of Health and Human Services informed Mr. Price that his loss-of-consortium claim could not be considered by the Court of Claims.  Four months later, on March 2, 1998, Mr. Price filed a motion in the Court of Claims to dismiss his loss-of-consortium claim.  The Court of Claims granted the motion and dismissed Mr. Price's claim on March 5, 1998.  On April 8, 1998, the Court of Claims entered a judgment awarding Cathy Price an annuity amount of $ 669,900.  [DE 47, Ex. D]  On May 5, 1998, Cathy Price accepted the judgment.  *Id*.

Mr. Price eventually made his way back to state court.  On July 17, 1998, Mr. and Mrs. Price filed a motion in Lake Circuit Court to reinstate the case that they voluntarily dismissed five years earlier.  [DE 47, Ex. E]  Mr. and Mrs. Price did not serve Defendants with the motion

3

to reinstate. On July 20, 1998, the Lake Circuit Court reinstated Mr. and Mrs. Price's claims without a hearing and with no notice to Defendants.

On April 11, 2000 (almost two years after the reinstatement), Mr. and Mrs. Price filed motions for default judgment against Defendants American Cyanamid and Lederle Laboratories, claiming that the companies were in default for failing to appear and/or answer the Complaint. [DE 1, Ex. A at A28.] Once again, Mr. and Mrs. Price did not serve Defendants with the motions for default judgment.

The Lake Circuit Court granted the motions for default judgment in separate orders on April 19 and April 26, 2000, respectively. The Lake Circuit Court then scheduled a hearing on damages. On May 10, 2000, the Lake Circuit Court attempted to mail a copy of the two orders to Defendant Lederle Laboratories. The envelope, however, was addressed to Pearl River, *New Jersey*, as opposed to Pearl River, *New York*, where Lederle Laboratories maintains a place of business. On June 7, 2000, the envelope was returned to the Court marked "NO SUCH OFFICE IN STATE." There is no evidence that either order was mailed to Defendant American Cyanamid.

On June 16, 2000, Plaintiff Cathy Price, having accepted an award from the Vaccine Court, voluntarily dismissed her cause of action against all Defendants pursuant to Indiana Trial Rule 41(A)(1)(a). That same day, the Lake Circuit Court went ahead with a damages hearing and noted that "Defendants and counsel failed to appear." On July 3, 2000, the state court awarded Charles Price damages in the amount of $5 million. Defendants did not receive any notice of this award until four years later, when Mr. Price took steps to enforce the default judgments. On June 3, 2004, in response to Mr. Price's motion, the Lake Circuit Court ordered

4

"Judgment Defendants" American Cyanamid and Lederle Laboratories to appear in court on June 23, 2004 and to provide information on their property, income, and profits subject to execution. Defendants actually received a copy of the state court's June 3, 2004 order.

On June 22, 2004, Defendants removed the case to federal court and promptly moved to vacate the default judgments. This Court vacated the default judgments and denied Plaintiff's motion to remand. Defendants then moved for judgment on the pleadings on statute of limitations grounds. The court gave the Plaintiff time to conduct some limited discovery on the statute of limitations issue, and then the motion was re-filed by the Defendants as a motion for summary judgment. That is the matter currently before the Court.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact presents a "genuine issue" if it is "one on which a reasonable fact finder could find for the nonmoving party." *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) (citations omitted). Bare allegations unsupported by specific facts are not sufficient to survive summary judgment. *Id*. In assessing whether summary judgment is proper, the Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005).

### B. Background on the Vaccine Act

According to Congress, the vaccination of children against preventable, infectious diseases has been "one of the most spectacularly effective public health initiatives this country has ever undertaken." H.R. Rep. No. 99-908, at *4 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6345. Vaccines have prevented the death of thousands of children each year and have substantially reduced the effects resulting from disease. *Id*. While most children benefit from the use of vaccines, "a small but significant number have been gravely injured." *Id*. Two significant concerns accompany these vaccine-related injuries: 1) the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and 2) the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. *See id.* at *7, 1986 U.S.C.C.A.N. at 6348.

To address these concerns, Congress enacted the National Childhood Vaccine Injury Act (the Vaccine Act) in 1986. 42 U.S.C. § 300aa-1 *et seq.* The Vaccine Act is a remedial program designed to provide swift compensation for persons injured by vaccines while ensuring that the nation's supply of vaccines is not jeopardized by the costs and risks of tort litigation. *Moss v. Merck & Co.*, 381 F.3d 501, 503 (5th Cir. 2004); *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir. 1994).

Among other provisions, the Vaccine Act bars certain individuals from filing a civil tort action to recover for vaccine-related injuries unless they first pursue relief in the United States Court of Claims. *See* 42 U.S.C. § 300aa-11(a)(2)(A). The tort action bar applies "only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). A person "is qualified to file

6

a petition" only if that person suffered injury after he or she "received a vaccine . . . or contracted polio, directly or indirectly, from another person who received an oral polio vaccine." 42 U.S.C. § 300aa-11(c)(1)(A). In other words, unless a person received a vaccine or contracted polio from someone who did, that person cannot file a petition with the Vaccine Court and is not subject to the tort suit ban. *Schafer*, 20 F.3d at 5.

  C. **Mr. Price's Claim is Time-Barred**

Mr. Price's claim arises under Indiana law. Therefore, Indiana law supplies the appropriate statute of limitations. *See Schillinger v. Union Pacific R. Co.*, 425 F.3d 330, 334 (7th Cir. 2005); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999). The parties agree that the statute of limitations for loss-of-consortium claims in Indiana is two years. IND. CODE. § 34-11-2-4. The parties disagree about when the two-year limitation period began to run and, more importantly, if and when it expired.

In Indiana, a claim for personal injury including loss of consortium accrues "when the plaintiff knew or, in the exercise or ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another." *INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736, 743 (Ind. App. 1999). Here, Mr. Price's loss-of-consortium claim accrued no later than February 3, 1992. On that date, Cathy Price reported to a therapist that she had been diagnosed with polio, that the "onset" occurred on July 14, 1991, and that she was exposed to polio when she had contact with a recently-vaccinated child on June 11, 1991. [DE 47, Ex. H] Mr. Price's loss-of-consortium claim likely accrued sometime before February 3, 1992, but, construing the facts in a light most favorable to Price, the two-year limitation period began to run

no later than February 3, 1992.  Therefore, without any tolling events, the limitation period expired no later than February 3, 1994.

Although Mr. Price filed suit in Lake Circuit Court on June 10, 1993, this did not toll the limitation period because he and his wife dismissed the suit voluntarily.  The Seventh Circuit and Indiana courts have held consistently that a voluntary dismissal does not toll the statute of limitations.  *See Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) ("a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed"); *Al-Challah v. Barger Packaging*, 820 N.E.2d 670, 675 (Ind. App. 2005) ("A complaint that is voluntarily dismissed is treated as if it never existed and, thus, cannot toll the statute of limitations."); *accord Kohlman v. Finkelstein*, 509 N.E.2d 228, 232 (Ind. App. 1987).  Thus, by the time Mr. Price attempted to "reinstate" his case in Lake Circuit Court in July 1998, his loss-of-consortium claim had expired more than four years earlier.  Because Price's claim is time-barred, Defendants are entitled to summary judgment.

### D. Price's Arguments

Mr. Price offers several arguments as to why his loss of consortium claim is, or ought to be treated as, timely.  None of the arguments is persuasive.

#### 1. When the State Law Limitation Period Began To Run

First, Mr. Price argues that the two-year limitations period could not have begun to run until March 1998 when Price dismissed his loss-of-consortium claim in the Vaccine Court.  According to Mr. Price, the Vaccine Court had exclusive jurisdiction over his claim and, as a matter of law, he was not allowed to pursue his claim in state court until he satisfied "certain federal statutory conditions precedent."  [DE 49 at 9]  Mr. Price contends that it was only when

8

he withdrew his loss of consortium claim from the Vaccine Court did the Lake Circuit Court acquire jurisdiction and the two-year statute of limitations begin to run.

Mr. Price's argument fails because his loss-of-consortium claim never fell within the scope of the Vaccine Act.  Mr. Price did not suffer injury after receiving a vaccine, nor did he contract polio directly or indirectly from someone who received a vaccine.  *See Schafer*, 20 F.3d at 5 (the Vaccine Act covers the claims of a direct victim who took the vaccine or caught polio from a vaccine recipient, but not the claims of family members for loss of consortium and companionship); *Liu v. Aventis Pasteur, Inc.*, 219 F. Supp. 2d 762, 768 (W.D. Tex. 2002) (parents of minor child who suffered vaccine-related injuries could only bring representative claims on behalf of minor child in Vaccine Court and were barred under the Vaccine Act from bringing individual claims including loss of consortium in Vaccine Court).

Thus, the Vaccine Court did not have "exclusive jurisdiction" over Price's loss-of-consortium claim.  Quite the opposite, the Vaccine Court had no jurisdiction at all over such a claim.  Because loss-of-consortium claims are outside the scope of the Vaccine Act, the Lake Circuit Court had subject matter jurisdiction over Mr. Price's loss-of-consortium claim when he filed it (and then voluntarily dismissed it) in 1993.  Nothing in the Vaccine Act tolled the statute of limitations for Mr. Price's loss-of-consortium claim.  *See Liu*, 219 F. Supp. 2d at 768 n.6 ("The Vaccine Act does not toll the statute of limitations for the parents' [derivative] claims while they are representing their child in the Court of Federal Claims.")

Mr. Price's argument is also flawed because it ignores the plain language of the Vaccine Act.  The Vaccine Act provides that "[i]f a petition is filed under section 300aa-11 of this title for a vaccine-related injury or death, limitations of actions under State law shall be stayed with

9

respect to a civil action brought for such injury or death for the period *beginning on the date the petition is filed* and ending on the date (1) an election is made . . . to file the civil action or (2) an election is made . . . to withdraw the petition." 42 U.S.C. § 300aa-16(c) (emphasis added). If, as Price contends, the Vaccine Act prevented the state statute of limitations from starting until a party made an election under the Vaccine Act, then there would be no need to stay the limitations period "beginning on the date the petition is filed." The Court agrees with Defendants that Price's argument essentially writes the phrase "beginning on the date the petition is filed" right out of the statute.

### 2. Scope of Charles Price's Claim

Mr. Price contends that his claim is not solely for loss of consortium but includes expenses he incurred "on behalf of" his wife Cathy. It is difficult to see how any such expenses would not have been part of Mrs. Price's claim before the Vaccine Court. Nevertheless, Mr. Price argues that unless he pursued recovery of these expenses in the Vaccine Court, he would have been precluded from pursuing them in any civil tort action. Mr. Price relies on two district court decisions, *Strauss v. American Home Products Corp.*, 208 F. Supp. 2d 711 (S.D. Tex. 2002) and *Blackmon v. American Home Products Corp.*, 328 F. Supp. 2d 647 (S.D. Tex. 2004). Both decisions held in part that the parents of a child who suffered vaccine-related injuries could not maintain state law claims for expenses the parents had incurred on behalf of the injured child because the parents had not previously asserted those claims in the Vaccine Court. *See Strauss*, 208 F. Supp. 2d at 715, n.8; *Blackmon*, 328 F. Supp. 2d at 659.

*Strauss* and *Blackmon* are easily distinguishable because, in this case, Mr. Price has not made a claim for expenses incurred on behalf of his wife. The Complaint alleges merely that

Charles Price "has sustained losses, has been damaged and injured and has otherwise lost the consortium of his previously healthy spouse." [DE 47, Ex. A, ¶ 12]  There is no allegation that Charles Price incurred any expense *on behalf of* Cathy or that any part of Charles' claim is brought in a representative capacity on behalf of Cathy.  The complaint plainly alleges that Cathy Price "incurred and will continue to incur health care provider bills for services rendered due to her conditions," but no similar allegation appears in Charles Price's claim.  *Id*. at ¶ 11.  The Court acknowledges that pleadings are to be "construed as to do substantial justice."  Fed. R. Civ. P. 8.  Nevertheless, the Court cannot reasonably construe Charles Price's claim to be representative of his wife or to seek recovery of expenses that he incurred on her behalf.  A more natural reading of the complaint is that expenses incurred for the care of Mrs. Price were part of her claim before the Vaccine Court.  Mr. Price's claim, on the other hand, is limited to his loss of consortium.

Even if the Court were to construe Mr. Price's claim to cover representative expenses, his claim for any such expenses would still fail.  Mr. Price has not presented evidence that he pursued any representative expenses in the Vaccine Court.  He has not submitted the Vaccine Court petition or any other document to show that his Vaccine Court claim covered anything besides loss of consortium.  Without such evidence, Price is no different than the plaintiffs in *Strauss* and *Blackmon* and is barred from pursuing representative expenses here.  *See Strauss*, 208 F. Supp. 2d at 715, n.8; *Blackmon*, 328 F. Supp. 2d at 659.

### 3. The Indiana Medical Malpractice Act

Mr. Price next argues that the Indiana Medical Malpractice Act's treatment of "prematurely-filed claims" is analogous to this case and supports a finding that Mr. Price's loss-

of-consortium claim is timely. In Indiana, the limitations period for a medical malpractice claim begins to run on the date of the alleged malpractice. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind. 1993). However, before a plaintiff may file a medical malpractice suit in court, he or she must submit the proposed complaint to an independent medical review panel for evaluation. IND. CODE 34-18-1-1 *et seq*. The filing of the proposed complaint with the review panel tolls the statute of limitations until ninety days after the plaintiff receives the panel's opinion. *Id*.

Price relies on *St. Anthony Medical Center, Inc. v. Smith*, 592 N.E.2d 732, 737 (Ind. App. 1992). In *St. Anthony*, Smith sued a hospital after her husband suffered a fatal stroke while he was in the hospital's care. Contrary to the Indiana Medical Malpractice Act (IMMA), Smith filed her medical malpractice complaint in court before filing it with the independent review panel. While the sequence may have been reversed, Smith clearly filed the complaint in court and submitted it to the review panel within the statute of limitations. When the review panel issued its opinion, Smith promptly moved to reinstate her case two weeks later and well within the IMMA's 90-day tolling period. The hospital then moved to dismiss the complaint. According to the hospital, Smith's original complaint was a nullity because she filed it before submitting it the review panel. Therefore, the hospital argued, Smith's motion to reinstate was meaningless because there was no complaint to "reinstate." The trial court denied the motion to dismiss and the hospital ultimately appealed. The Indiana appellate court affirmed and held that Smith's motion to reinstate constituted a refiling of the complaint. *Id*. at 736. "To hold otherwise would constitute a gross injustice" because Smith had diligently pursued her claim against the hospital and she ultimately complied with the requirements of the IMMA. *Id*. at 736-37.

*St. Anthony* does not help Mr. Price because the plaintiff in that case (Smith) tolled the limitations period before it expired while Mr. Price did not. Under the IMMA, the filing of a proposed complaint with the review panel tolls the limitation period until 90 days after the plaintiff receives the panel's opinion. Smith submitted her complaint to the panel well within the limitations period and then re-filed the complaint (via a motion to reinstate) just two weeks after the panel rendered its opinion. Plainly, Smith's complaint was timely.

Mr. Price, on the other hand, cannot point to a valid tolling event. His filing suit in Lake Circuit Court did not toll the limitations period because he voluntarily dismissed his claim. *See Elmore*, 227 F.3d at 1011; *Al-Challah*, 820 N.E.2d at 675. By the time Mr. Price returned to "reinstate" (or re-file) his complaint in state court more than four years later, the limitations period on his claim had expired. This is in sharp contrast to Ms. Smith who "reinstated" her complaint within the limitations period.

If any case interpreting the IMMA is instructive, it is *Jordan v. Deery*, 609 N.E.2d 1104 (Ind. App. 1993). In *Jordan*, the parents of an infant alleged malpractice during the labor and delivery of the child. *Id*. at 1106. With respect to their individual claims, the parents filed a proposed complaint with the review panel seven days before the limitations period expired. *Id*. The parents received the panel's decision on May 7, 1990 but did not file the complaint in court until September 12, 1990. *Id*. In order to be timely, the parents had ninety-seven days upon receipt of the panel's opinion to file their complaint in court (90 days under the IMMA's post-opinion tolling period plus the seven days remaining on the limitations period when the parents submitted their complaint to the review panel). *Id*. at 1108. Because the parents filed suit more than 97 days after receipt of the panel's opinion, the defendants were entitled to summary

13

judgment on statute of limitations grounds.  *Id*.  Mr. Price, like the parents in *Jordan*, may have taken steps to advise Defendants of his claims against them but ultimately did not pursue them within the limitations period.

### 4.      Indiana Journey's Account Statute

Price next argues that his claim is rescued by the Indiana Journey's Account Statute, IND. CODE 34-11-8-1 (formerly IND. CODE 34-1-2-8).  Typically, the Journey's Account Statute is used to save an action filed in the wrong court by allowing the plaintiff enough time to re-file the same claim in the correct forum.  *See Cox v. American Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind. 1997).  Here, the argument is a non-starter because the Journey's Account Statute does not protect an action dismissed voluntarily.  *See Morris v. Jenkins*, 819 F.2d 678, 680 (7th Cir. 1987) ("one who voluntarily dismisses his own cause of action and fails to re-file it within the ordinarily applicable limitations period cannot seek the protection of the [Indiana] Journey's Account Statute, which requires that in order to be deemed a timely continuation a cause of action must first 'fail' before it is filed anew"); *see also Al-Challah*, 820 N.E.2d at 675, *citing Kohlman*, 509 N.E.2d at 232 (Indiana Journey's Account Statute does not apply to a plaintiff who voluntarily dismisses a complaint).

### 5.      Equitable Remedies

Finally, Price seeks equitable relief on three different grounds:  equitable estoppel, equitable tolling; and mutual mistake.  Even if his claim is time-barred, Mr. Price argues that he should have his day in court because Defendants misled him to believe that both he and his wife had to pursue their claims in the Vaccine Court before seeking recovery in state court.

As a threshold matter, Mr. Price is not entitled to any type of equitable relief because "[h]e who seeks equity must come into court with clean hands." *Wedgewood Comm. Ass'n, Inc. v. Nash*, 810 N.E.2d 346, 347 (Ind. 2004). This maxim "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id*. (citing *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 330 (1994) (Scalia, J., concurring)). The maxim also "gives wide range to the [] court's use of discretion in refusing to aid the unclean litigant." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945); *Wedgewood*, 810 N.E.2d at 348.

For purposes of obtaining equitable relief, Mr. Price's hands are far from clean. After his voluntary dismissal in state court, Mr. Price waited a year before filing a petition in the Vaccine Court. When the Vaccine Court advised him in December 1997 that it could not hear his loss-of-consortium claim, he waited approximately seven months to reinstate the claim in state court. Astonishingly enough, when Price returned to state court and reinstated his case, he never served the petition to reinstate on the defendants. Therefore, the defendants were completely unaware that the case was once again pending against them in Lake County. Then, after the reinstatement, Price waited almost *two* more years to move for default judgments, again without notice to Defendants. After obtaining a $5 million default judgment against Defendants, Price then waited another *four* years to enforce the default judgments that had been obtained without proper notice. It was only at that point that the defendants became aware of the lawsuit – some 12 years after the cause of action first accrued. Mr. Price is not entitled to equitable relief after this sequence of events.

Despite this finding, the Court will address Mr. Price's equitable arguments individually.

15

       *a.*  *Equitable Estoppel*

  To invoke the doctrine of equitable estoppel, a party must show its (1) lack of knowledge of a material fact and of the means of knowledge as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Story Bed & Breakfast, LLP v. Brown Cty. Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004). This means that Price must show, among other things, that he did not have full knowledge of some material *fact* and he did not have the ability to learn that *fact*. *Id*. The Supreme Court of Indiana has held that estoppel "cannot arise out of a lack of knowledge of the law, since all have an equal opportunity to know the law, and are presumed to know it." *Iterman v. Baker*, 15 N.E.2d 365, 370 (Ind. 1938).

  Price seeks equitable relief because he feels that American Cyanamid misled him about the *law*, namely whether his loss-of-consortium claim was covered by the Vaccine Act. Misleading representations about the law do not support a claim for equitable estoppel. Plaintiff had the ability and the obligation to research the law. Indeed, the *Shaffer* decision – which held that only persons who received a vaccine or contracted polio from someone who did may assert a claim under the Vaccine Act – was rendered in March 1994, four months before the Prices filed their petition in the Vaccine Court. If in 1993, when the Prices voluntarily dismissed their complaint in state court to pursue relief in the Court of Claims, there was any uncertainty about whether the Vaccine Act covered loss-of-consortium claims, Mr. Price should have stayed his claim in state court until he could ascertain definitively whether the Vaccine Act covered his loss-of-consortium claim. This he did not do. Instead, he dismissed his claim voluntarily.

### b. Equitable Tolling Doctrine

"Equitable tolling excuses an untimely filing when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) (citation and quotations omitted); *KPMG, Peat Marwick, LLP v. Carmel Fin. Corp., Inc.*, 784 N.E.2d 1057, 1063 n.3 (Ind. App. 2003). The Seventh Circuit "rarely deem[s] equitable tolling appropriate." *Id*. (noting, for instance, that attorney negligence is not grounds for equitable tolling).

Mr. Price relies on *Torres v. Parkview Foods*, 468 N.E.2d 580 (Ind. App. 1984). In *Torres*, the plaintiff filed a personal injury action in federal court the day before the statute of limitations expired. The defendant moved to dismiss for lack of diversity jurisdiction. While the motion to dismiss was pending (yet after the limitations period had run), the plaintiff filed suit in state court asserting the same claim against the same defendant. The federal court ultimately dismissed its case for lack of subject matter jurisdiction. The state court dismissed its case on statute of limitations grounds. The plaintiff appealed the state court dismissal and the Indiana appellate court reversed. The Court held when a plaintiff brings an action in federal court in good faith within the statute of limitations, but it fails for lack of diversity jurisdiction, the filing of the suit tolls the statute of limitations for purposes of determining whether a subsequent state action involving the same parties and the same claims is timely filed. 468 N.E.2d at 583.

*Torres* is distinguishable. Unlike the plaintiff in *Torres*, Mr. Price voluntarily dismissed his claim in state court. Previously-cited authority makes clear that a voluntary dismissal cannot toll the statute of limitations. *Elmore,* 227 F.3d at 1011; *Al-Challah*, 820 N.E.2d at 675. In addition, the *Torres* court tolled the limitation period at least in part "to insure to the diligent

17

suitor the right to a hearing in court till [sic] he reaches a judgment on the merits." 468 N.E.2d at 583 (*quoting Gaines v. City of New York*, 215 N.Y. 533 (1915)). As explained above, Mr. Price is not a "diligent suitor." The plaintiff in *Torres* filed suit in state court approximately one month after the defendant moved to dismiss for lack of diversity jurisdiction. In contrast, Mr. Price waited a year after his voluntary dismissal to file a petition in the Vaccine Court and then waited several months to return to state court after learning that the Vaccine Court would not hear his loss-of-consortium claim. Moreover, Mr. Price's two-year delay in seeking default judgments in state court and his nearly four-year delay in seeking to enforce those judgments further demonstrate a lack of diligence.

        *c.*     *Mutual Mistake*

Finally, Mr. Price argues briefly that he is entitled to the equitable remedy of mutual mistake. Mr. Price cites an Indiana Law Encyclopedia, which provides that "[e]quity will relieve against a mistake of law when the surrounding facts raise an independent equity, as where there has been a mistake of law by one party induced by misrepresentation, deceit, or undue influence on the part of the other." 12 IND. LAW ENCYCL., Equity § 11. As authority for this proposition, the encyclopedia cites a nineteenth-century case, *Carley v. Lewis*, 24 Ind. 23, 1865 WL 1669 (1865), which held that although "a mistake, purely of law, is no ground of relief in equity, [] it may be accompanied by such circumstances as will entitle the party to relief." *Id*. at *3.

Even if the Court were to assume that this doctrine still exists under Indiana law, the circumstances of this case do not entitle Mr. Price to relief. While American Cyanamid's statement of the law in its June 25, 1993 letter may not have been correct, it was Mr. Price's obligation to research the law and determine whether American Cyanamid's representations

18

were correct.  Furthermore, there is nothing in the record to indicate that American Cyanamid specifically represented that loss-of-consortium claims were covered by the Vaccine Act, or that Mr. Price ever inquired about or researched that precise issue.  With such evidence, perhaps Mr. Price would have a stronger case for equitable relief.  As the records stands though, the Court rejects Mr. Price's request for equitable relief on a mutual mistake theory.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE 45] is **GRANTED**.   The Clerk shall treat this action as **TERMINATED** and all further settings are hereby **VACATED.**

**SO ORDERED**.

ENTERED:  March 14, 2006

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT